CHRISTENSEN ET AL., APPELLANTS, *v.*
ROUMFORT ET AL., APPELLEES.

(No. 83 C.A. 124—Decided
August 29, 1984.)

*Roy A. Mimna,* for appellants.
*Lawrence R. Springer,* for appellees.

Cox, J. This is a properly perfected appeal from the order of the Common Pleas Court of Mahoning County, Ohio, granting summary judgment to defendants-appellees.

This action was originally filed on June 2, 1980, by the clerk and trustees of Eastminster Presbytery (hereinafter "Eastminster"). The United Presbyterian Church in the United States of America (hereinafter "UPCUSA") and Eastminster Presbytery were subsequently added as parties plaintiff by order of the trial court. The defendants are members of the Tabernacle United Presbyterian Church (hereinafter "Tabernacle"). Tabernacle is also a defendant and is a local church located in Austintown, Ohio. It is a non-profit Ohio corporation and defendant Robert E.

Ralston is the minister of the Tabernacle.

The complaint sought to restrain the defendants from transferring or using any of the personal or real property of the church; from holding services, meetings, or conducting any business in the church, or using the church for any purposes whatsoever; and from interfering with the possession and use of the property by the plaintiffs, and also being enjoined from using the name Tabernacle United Presbyterian Church. In addition, the complaint sought an accounting of all property of Tabernacle and that the defendants be required to perform all acts necessary to convey to plaintiffs the real property and tangible personal property and all other church property to plaintiffs and that defendants surrender the records of the church to plaintiffs.

On April 9, 1981, defendants filed a motion for summary judgment with affidavits and exhibits and on May 1, 1981, plaintiffs filed a similar motion. After a hearing the court entered an opinion and judgment sustaining the motion for summary judgment of defendants and overruling the motion for summary judgment filed by plaintiffs.

The sole assignment of error in this case is:

"The Plaintiffs-Appellants, for their assignment of error, say that the Opinion and Judgment Entry rendered by the Mahoning County Court of Common Pleas on September 13, 1983, overruling the motion by Plaintiffs-Appellants for summary judgment, and granting the motion by Defendants-Appellees for summary judgment, is erroneous in that the judgment is contrary to law; and the trial court should have overruled appellees' motion for summary judgment and granted appellants' motion for sum-

mary judgment, thus granting the relief prayed for in the Complaint.''

The sole issue, then, is whether the trial court was correct in its ruling on the motions for summary judgment. The complex fact situation in this matter is as follows:

The Tabernacle United Presbyterian Church is a local church. The title to the property is in the name of Tabernacle. It is a non-profit corporation organized for the purposes described in its certificate of incorporation and one of those purposes is the holding of title to its property.

UPCUSA is a voluntary religious association organized in a connectional and hierarchical structure of ascending representative levels of ecclesiastical authority called judicatories. A connectional church is one in which there are connections with higher groups in the church but also reservations of powers to the local church. The constitution of UPCUSA is comprised of two parts, The Book of Confessions, which deals primarily with religious doctrine, and The Book of Order, which deals with its system of government.

Each local church, such as Tabernacle, is governed by a body called the session, which consists of the minister and the ruling elders elected by the congregation. In turn, the local churches within specified geographical areas are organized into presbyteries consisting of all the ministers in the specified geographical area and at least one ruling elder from each individual church. Each presbytery has certain expressly delegated supervisory powers and authority designated to it by The Book of Order. Tabernacle is located within the geographical area of Eastminster Presbytery.

The next higher judicatory is the synod which consists of a number of presbyteries and then at the top of the pyramid is the general assembly, the commissioners of which are elected annually by the various presbyteries. For a number of years prior to March 9, 1980, Tabernacle was affiliated with UPCUSA and thereby, through the governmental structure outlined above, with Eastminster.

The Book of Order, specifically Sections 62.01 through 62.04, requires each local church and each presbytery to form a corporation to receive, hold, encumber, manage, and transfer property of that church or presbytery. Eastminster was at all times herein pertinent an endowment fund corporation under the laws of the state of Ohio and governed by R.C. 1715.12. Numerous differences in practices and doctrines which had been developing over the years came to a climax in 1980 and by unanimous vote of two hundred twenty-seven to zero, on March 9, 1980, Tabernacle's congregation withdrew from UPCUSA and dissolved its relationship with Eastminster. When Eastminster received notice of these events it appointed a commission to investigate the facts surrounding these actions, and the commission found no loyal members in attendance at Tabernacle, and convened on April 7, 1980, to consider a course of action. The commission recommended that Eastminster dissolve the Tabernacle in accordance with Section 62.11 of The Book of Order which states as follows:

"Whenever hereafter a particular church is formally dissolved by the presbytery, or has become extinct by reason of the dispersal of its members, the abandonment of its work, or other cause, such property as it may have, both real and personal, shall be held, used, and applied for such uses, purposes, and trusts as the presbytery may direct, limit, and appoint, or such property may be sold or disposed of as the presbytery may direct, in conformity with the Constitution of the United Presbyterian Church in the United States of America.''

A hearing was held by the presbytery to determine the possible

dissolution of Tabernacle and at the conclusion of the hearing, Eastminster voted to dissolve Tabernacle and also directed the trustees of the presbytery to receive all properties of Tabernacle and to preserve the records of the church. Tabernacle refused to turn over its church name, records, and all other property to Eastminster and this action was filed.

The appellants, in their argument, rely on R.C. 1715.12 which reads:

"* * * If a parish or congregation connected with the denomination represented by such board becomes extinct by reason of the death or dispersion of its members, such board may take possession of the church property of the parish, congregation, or society, whether real or personal, and may rent, lease, sell, invest, or otherwise dispose of such property for the benefit of such denomination, within the territorial limits represented by the body by which the board was appointed, and subject to such regulations as such body prescribes. All property, held by such board, and the proceeds of such property, shall be applied to the use and benefit of the proper denomination within this state."

In essence, appellants' conclusion that there were no loyal members in attendance at Tabernacle resulted in Eastminster's determination that the church had become extinct by reason of the death or dispersion of its members. Therefore, appellants urge, a reversionary interest was created in the presbytery by operation of law and although the property is titled in the name of Tabernacle, a non-profit corporation, the beneficial owner is the presbytery and the corporations formed are merely civil agents of the churches and judicatories. They state that in this case the civil corporation is merely an instrumentality.

This court is governed by the Supreme Court decision in *Watson* v. *Jones* (1871), 80 U.S. 679, in which the court stated that civil courts are limited in their power to resolve church-related disputes. The court said that the First Amendment prohibits courts from exercising jurisdiction over purely ecclesiastical matters. Thus, when a hierarchical organization is involved, the decisions of that church's judicatory on issues of church discipline or government are final. They are binding on the civil courts.

The issue in this case, however, is not discipline. It is, who owns the property—a civil issue. This same issue was determined in *Maryland & Virginia Eldership of the Churches of God* v. *Church of God at Sharpsburg* (1970), 396 U.S. 367. In that case the Maryland court looked to the state statutes, the express language of the property deeds, the local church charters, and the constitution of the general church and found that all these sources vested property control in the local churches and failed to place control of the property in the general church. Likewise, the Supreme Court of Ohio specifically followed this principle of law in *Serbian Orthodox Church* v. *Kelemen* (1970), 21 Ohio St. 2d 154 [50 O.O.2d 367].

Inasmuch as the state has a legitimate interest in resolving property disputes, and a civil court is a proper forum for that resolution, a determination of the issue submitted to the court is appropriate. *Presbyterian Church in the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church* (1969), 393 U.S. 440.

This state has adopted and recognizes the neutral principles of law and we apply them here. We do so in the belief that when properly applied, such application avoids drawing civil courts into church controversies by focusing on evidence from which the court may discern the objective intention of the parties and also permits the state to protect its legitimate interest in securing title to properties. *First Presbyterian Church of Schenectady* v. *United*

*Presbyterian Church in the United States* (1984), 62 N.Y. 2d 110, 476 N.Y.Supp. 2d 86.

Tabernacle held title to the property free of any competing interests. The deeds all named Tabernacle as the grantee and contained no forfeiture or reversionary clause in favor of appellants nor does the record indicate that the property was acquired by any kind of restrictive gift. The language of the deed contains no restrictions. The Book of Order relied upon by the appellants does not apply in this instant case. Tabernacle was not dispersed. The same is true of R.C. 1715.12 which allows the hierarchical church to take possession of church property only "*[i]f a parish or congregation connected with the denomination represented by such board becomes extinct by reason of the death or dispersion of its members.*" (Emphasis added.)

To establish a reversionary interest under this section, the appellants must have originally owned something that could revert to them. That is not the case here. Tabernacle is certainly not extinct in that it still maintains a place of worship and its members are clearly not dispersed.

Therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

O'NEILL, P.J., and DONOFRIO, J., concur.